**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CAMILLE BROOME, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHAIRISH, INC.,

Defendant.

Case No. 4:26-cv-1144-YGR

**FIRST AMENDED CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff brings this action on behalf of herself, and all others similarly situated against Chairish, Inc. ("Defendant" or "Chairish"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1. For years, Chairish has nickel and dimed online purchasers on its website www.chairish.com in violation of the Consumer Legal Remedies Act. Whenever a consumer visits the website chairish.com and selects an item for purchase, they are not shown the total cost upfront. Instead, consumers are quoted an artificially low price which excludes all fees, only to sneak in a hidden "Processing Fee" after consumers click through various screens required to make a purchase. To make matters worse, Defendant's fee is affirmatively disclosed for the first and only time on the final "Place Order" screen, *after* consumers input all their shipping and credit card information. This cheap trick has enabled Defendant to swindle substantial sums of money from its customers.

2. By analogy, if consumers were to walk into a brick-and-mortar antique store, saw an heirloom on the shelf for sale for $129.00, grabbed the item, and took it to the checkout counter, they would expect to pay $129.00 to the store, plus sales tax to the government. If, *after* consumers swiped their credit card, they noticed in fine print on the credit card pad that they would *also* be charged a $5.00 "Processing Fee" for the service of having their wares rolled down the conveyor belt and the tag's barcodes scanned, they would reasonably be outraged. And yet, this is exactly what Chairish does every day through its online marketplace.

3. This practice is known as drip pricing. "Drip pricing" is "where a firm advertises the product's base price and later reveals other mandatory fees." *Chowning v. Tyler Techs., Inc.*, 2025 WL 3496690, at *2 (N.D. Cal. Dec. 5, 2025).

4. Drip pricing has long violated the California Consumer Legal Remedies Act. "California banned bait and switch in consumer transactions when it passed the Consumers Legal Remedies Act (the 'CLRA') in 1970." *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1148 (N.D. Cal. 2025) (citation omitted). And "[a] common form of bait and switch is drip pricing." *Id.*

5. However, in the summer of 2024, the California legislature "amended the CLRA to *directly prohibit* drip pricing." *Mansfield*, 802 F. Supp. 3d at 1148 (emphasis added). Effective July 1, 2024, California Civil Code § 1770(a)(29)(A) makes it unlawful to "[a]dvertis[e], display[], or offer[] a price for a good or service that does not include all mandatory fees or charges."[1] subject to a few inapplicable exceptions (like taxes or shipping).

6. According to California Attorney General's Office, "[t]he law is 'intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service.'"[2] "Put simply, **the price a Californian sees should be the price they pay."**[3] That said, the legislature's recent enactment of California Civil Code §§ 1770(a)(29)(A) is not meant to suggest it was previously legal. "Advertising or listing a price that is less than what a consumer will eventually be charged is a form of deceptive advertising that also violates existing state … law."[4] The CLRA has prohibited bait and switch sales tactics for more than half a century. *Mansfield*, 802 F. Supp. 3d at 1148.

7. In or around January 30, 2025, Plaintiff Broome made a purchase on Defendant's Website. Defendant advertised the price of this item as $5,800, exclusive of tax and shipping. However, when Plaintiff Broome went to submit her order, after she had already entered in her shipping and credit card information, a "Processing Fee" of $185 was added to the total cost of the item. This Processing Fee was not included in the original price of the item advertised on Defendant's Website.

8. For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other antique purchasers for Defendant's sales in the state of California for actual damages,

[1] The law has a few exceptions not applicable here. A seller may disclose "[t]axes or fees imposed by a government on the transaction" or "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer," after the initial price display. California Civ. Code §§ 1770(a)(29)(A).

[2] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

[3] *Id* (emphasis in original).

[4] *Id.*

reasonable attorneys' costs and fees, and injunctive relief under California Civil Code §§ 1770(a)(29)(A) and 1770(a)(9).

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant sells antique home furnishings to consumers in the state of California through its website as part of its regular course of business and collects unlawfully applied fees from Californians. Defendant targets consumers whom it knows to reside in California (based on shipping information provided during checkout).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

12. Plaintiff Camille Broome is an individual consumer who, at all times material hereto, was a citizen and resident of Oakland, California.

13. Plaintiff purchased the Pair of Distressed Greco-Roman Neoclassical Style Ionic Columns from Defendant in or around January 30, 2025.

14. During this transaction, Plaintiff was forced to pay Defendant's Processing Fee, which amounted to $185.

15. At the time Plaintiff purchased the Pair of Distressed Greco-Roman Neoclassical Style Ionic Columns, she was not aware that Defendant's practices were unlawful under California Civil Code §§ 1770(a)(9) and 1770(a)(29)(A). Plaintiff was not browsing Chairish in search of legal violations. Plaintiff was instead browsing Chairish because she sincerely intended to purchase antique furnishings, and she did, in fact, purchase antique furnishings.

16. The transaction flow process that Plaintiff viewed on Defendant's website was substantially similar as that depicted in this complaint.

17. Defendant Chairish, Inc. is a Delaware corporation with its principal place of business in San Francisco, California. Defendant offers buying and selling of furniture, art, décor, lighting, rugs and other home furnishings throughout the United States, including in the state of California. Defendant owns and operates the universally accessible, interactive website https://www.chairish.com, which website accepts orders from all the United States and delivers products to all the states, including California, as part of its regular course of business.

**<u>RELEVANT FACTUAL ALLEGATIONS</u>**

18. Defendant owns and operates a website, and a mobile application available on iOS. Users of both the website and the mobile application may purchase items (1) by making a direct purchase (the "Add to Cart" feature), or, (2) by placing a bid and waiting for it to be accepted (the "Make an Offer" feature).

***<u>Purchases Made Using the Website's "Buy Now" Feature</u>***

19. When a consumer visits Defendant's website, Chairish.com, on the main page, they can search for furniture, art, décor, rugs, and more. *See* Figures 1 and 2, below.

**Figure 1**



**Figure 2**




20. After a user clicks on an item, the purchase process begins and users are prompted to either click "Add to Cart" to purchase the item at the full listed price or "make an offer" by choosing a suggested offer or creating their own and clicking "review offer". *See* Figure 3, next page). At this point, the "total cost" of the item is never shown, in violation of California Civil Code § 1770(a)(29)(A). *See id*. Instead, Defendant quotes an "Add to Cart" price that is *not* the total cost. *Id.* Rather, the website vaguely states in tiny grey font that "[f]ees, taxes and shipping costs will be calculated and added in the next step" without affirmatively disclosing what the "fees" are for.

**Figure 3**




21. Once users click the "Add To Cart" button (*see id.*), they are shown a pop-up screen prompting users to "Checkout" the item at the listed subtotal. *See* Figure 4, next page. Underneath the subtotal and the "Checkout" button in tiny, gray font is the language: "A processing fee of 3.99% will be applied to your order." *See Id*. However, the processing fee is not calculated and added to the subtotal at this stage. *Id.*

**Figure 4**




22. Once users click "Checkout", they are brought to another screen to enter their shipping address, shipping method and secure payment method. *See* Figure 5, next page. During each of these phases, the subtotal is still being represented as the "Item price" while stating it has a processing fee "TBD". *Id*. There is a (?) symbol next to the "Processing Fee." *Id*. If a consumer clicks on the (?) symbol, it discloses that a processing fee of 3.99% is included. See Figure 5-A..

**Figure 5**




**Figure 5-A**




23. Yet Defendant's total Processing Fee is never affirmatively disclosed until the user fills in their credit card information and reaches the final checkout page. *See* Figures 5 and 6, next page. Even then, it is unclear why this vague "Processing Fee" requires charging consumers a fee separate and apart from the advertised $558.00 "Item Price." After all, consumers on Chairish cannot buy *any* item from the website with their credit card without paying this "Processing Fee." In the brick-and-mortar context, no consumer would reasonably expect to have to pay a 3.99% "Processing Fee" for the service of scanning the antiques' barcodes and packaging them up.

**Figure 6**




24. Furthermore, *at no point* could a user using their credit card ever purchase the plates at the "Add to Cart" price of $558. *Compare* Figure 3 *with* Figure 6. And while Chairish includes a disclaimer in that users can opt out of this fee if they click on the (?) icon, users paying with

PayPal, depending on how they choose to fund the transaction, would still need to pay PayPal a "credit card and debit card link and confirmation fee," a "PayPal Debit Mastercard … fee," or various "other consumer fees."[5] In other words, the total price of each item, inclusive of all charges, is *never* disclosed before a user clicks "Add to Cart" and reaches the final step in the checkout process prior to placing an order (*see* Figure 6).

***<u>Purchases Made Using the Website's "make an offer" Feature</u>***

25. Website users can also purchase an item using the website's "make an offer" feature. *See* Figure 7.

**Figure 7**




26. Once users click "Review Offer," they are brought to another screen to enter their shipping address, shipping method and secure payment method. *See* Figure 8, next page. Here, for

[5] *See* PayPal, Other Consumer Fees, https://www.paypal.com/us/digital-wallet/paypal-consumer-fees#credit-card.

the first time, users using the "make an offer" feature are confronted with the undisclosed "Processing Fee TBD". *Id.* During each of these phases, the subtotal is still being represented as the "Item price" while stating it has a "Processing Fee TBD". *Id.*

27. There is a (?) symbol next to the "Processing Fee." *See* Figure 8. If a consumer clicks on the (?) symbol, it discloses that a processing fee of 3.99% is included. *See* Figure 8-A. Again, the total processing fee is never calculated and added to the subtotal until *after* the user enters in their credit card information. *See* Figure 9, next page.

**Figure 8**



**Figure 9**


1. Shipping Address
Change
mamen@bursor.com
Max Amen
1990 N California Blvd., Suite 940
Walnut Creek, CA 94612
United States
925 822 7915
2. Shipping method
Change
$42.00 Feb 9–Feb 16
Parcel
Managed by Chairish. Packed by the seller; shipped via commercial parcel service via ground service.
3. Secure Payment Method
Change
VISA
Visa...6570
5/2029
4. Review & Confirm
Casa Nuno Blue and White Dinner Plates, Mixed Patterns, Set of 10
$672.00
Your offer (-10%) edit
$604.00
Subtotal
$604.00
Shipping
$42.00
Sales Tax
$58.28
Processing Fee
$26.00
TOTAL
$730.28
Upon submitting an offer, we will issue a pre-authorization hold on your credit card for the full amount, including shipping, taxes, and fees. Offers are non-cancellable. If your offer is not accepted by the seller within 72 hours, Chairish will instruct our payment processor to refund the amount in full, and funds will be returned to your account in approximately 3-5 business days. By submitting this form you acknowledge that you have read and agree to our Terms of Service, Privacy Policy, and Shipping and Returns policies.
SUBMIT YOUR OFFER
Shop safely with our Chairish Buyer Guarantee
Offer Summary
Casa Nuno Blue and White Dinner Plates, Mixed Patterns, Set of 10
$672.00
Your offer (-10%) edit
$604.00
Subtotal
$604.00
Shipping
$42.00
Sales Tax
$58.28
Processing Fee
$26.00
TOTAL
$730.28
Shop safely with our Chairish Buyer Guarantee
How offers work
Upon submitting an offer, we will issue a pre-authorization hold on your credit card for the full offer amount, including shipping, taxes, and fees.
The seller has 72 hours to accept, decline, or counter your offer. Need to have it? Buy it now for $672/set.
If the seller accepts your offer, your credit card will be charged and your order will be created.
If your offer expires or if the seller declines or counteroffers, we will release your funds immediately.
Learn more
Support

28. Furthermore, at no point can a user "make an offer" for the item at the price they select. *Compare* Figure 7 and Figure 9. Just as when using the "Add to Cart" feature, the total price of each item is *never* disclosed to a user using the "make an offer feature" until he or she reaches the final step in the checkout process prior to placing an order (*see* Figure 9). Thus, Defendant is "[a]dvertising, displaying, or offering a price for a good ... that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

***<u>Purchases Using the Mobile Applications "Add to Cart" feature</u>***

29. What is more, the checkout flow and the disclosures Defendant presents to consumers is the same whether they proceed via their web browser or computer, as depicted in Figures 1 and 2, or through Defendant's mobile application on iOS (the "App").

30. When a consumer downloads and opens the App, on the main screen, they can search for furniture, art, rugs, lighting décor and other antique furnishings. *See* Figure 10.

**Figure 10**



31. After a user clicks on an item, the purchase process begins and users are prompted to click "Add to Cart" or "Make an Offer". *See* Figure 11. At this point, the "total cost" of the item is never shown, in violation of California Civil Code § 1770(a)(29)(A). *See id*. Instead, Defendant quotes a "Add to Cart" price that is *not* the total cost. *See id.*

**Figure 11**



32. After users add the selected item to their cart, the items appear in their cart and users are prompted to "checkout" their item at the listed subtotal price. *See* Figure 12. Similar to the checkout pop up screen on Defendant's website, the bottom of the page includes a disclaimer in tiny grey font that "a processing fee of 3.99% will be added to your order." However, the subtotal is still displayed as the item price without the processing fee being calculated into it. *Id.* Like users purchasing items on chairish.com, App users are not shown the total processing fee and subtotal until they reach the final checkout page. *See* Figure 13, next page.

**Figure 12**



**Figure 13**




33. Furthermore, at no point can a user purchase the item at the "Add to Cart" price. *Compare* Figure 11 and Figure 13. Just as when using the "Add to Cart" feature on Defendant's website, the total price of each item is *never* disclosed to a user using the "make an offer feature" until he or she reaches the final step in the checkout process prior to placing an order (*see* Figure 13). Thus, Defendant is "[a]dvertising, displaying, or offering a price for a good ... that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

**Purchases Using the Mobile Application's "Make an Offer" Feature**

34. App users can also purchase an item using the App's "make an offer" feature. *See* Figure 14.

**Figure 14**




35. Once users click "Make an Offer," they are prompted to select a default offer amount or make a custom offer. *See* Figure 15, next page. Here, for the first time, users using the "make an offer feature" are confronted with a prompt informing them that "a 3.99% processing fee will be applied in the next step." *Id.*

**Figure 15**




36. However, the total processing fee is never calculated and added to the subtotal until *after* the user selects "Review Offer". *See* Figure 16, next page. After making an offer and selecting "Review Offer" users are sent to the final checkout screen and are prompted to enter in their shipping address, shipping method and payment method. *Id*. Here, users are finally confronted with the total price they will be bidding for their item with the "Processing Fee" calculated into it. *Id*.

///

///

///

///

**Figure 16**




37. Furthermore, at no point can a user "make an offer" for the item at the price they select. *Compare* Figure 15 and Figure 16. Just as when using the "Add to Cart" feature, the total price of each item is *never* disclosed to a user using the "Make an Offer" feature until he or she

reaches the final step in the checkout process prior to placing an order (*see* Figure 16). Thus, Defendant is "[a]dvertising, displaying, or offering a price for a good ... that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

**CALIFORNIA HIDDEN FEES STATUTE**

38. Effective July 1, 2024, California enacted California Civil Code § 1770(a)(29)(A), which provides that "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either ... [t]axes or fees imposed by a government on the transaction[]" and "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer[]" (Cal. Civ. Code § 1770(a)(29)(A)) is unlawful. Cal. Civ. Code § 1770(a); *Compare with* Figures 3, 6, 7, 9, 11, 13, 15 and 16.

39. This prohibition is designed to protect consumers. As Senator Bill Dodd, a co-author of SB 478, stated in describing this new law: "'Californians are fed up with dishonest fees being tacked on to seemingly everything ... It's an underhanded trick to boost corporate profits at the expense of those who can least afford it. Our bill will end these unfair practices and put the consumer first, leveling the playing field for reputable businesses that advertise the real price up front.'"[6]

40. And according to Attorney General of California Rob Bonta, "'[w]e can and should stop the fleecing of consumers. We can and should stop the imbalance in the marketplace[.]'"[7]

**CLASS ACTION ALLEGATIONS**

41. **Nationwide Class**: Plaintiff seeks to represent a class defined as all individuals in the United States who purchased items using Defendant's website on or after February 5, 2023 (the "Nationwide Class"). Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

---

[6] OFFICE OF THE ATTORNEY GENERAL, CALIFORNIA DEP'T OF JUSTICE, *Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees)* (May 16, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk (last visited Dec. 24, 2024).

[7] *Id.*

42. **California Class**: Plaintiff seeks to represent a class defined as all individuals in California who purchased items using Defendant's website on or after February 5, 2023 (the "California Class"). Excluded from the California Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

43. **Nationwide Honest Pricing Law Subclass**: Plaintiff also seeks to represent a subclass defined as all individuals in the United States who purchased items using Defendant's website on or after July 1, 2024 (the "Nationwide Honest Pricing Law Subclass"). Excluded from the Nationwide Honest Pricing Law Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

44. **California Honest Pricing Law Subclass**: Plaintiff also seeks to represent a subclass defined as all individuals in California who purchased items using Defendant's website on or after July 1, 2024 (the "California Honest Pricing Law Subclass"). Excluded from the California Honest Pricing Law Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

45. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the millions.[8] The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

46. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendant failed to include all mandatory fees or charges when advertising, displaying, or offering a price for the items for purchase, in violation of California Civil Code § 1770(a)(29)(A), and whether Defendant advertised goods or services with

---

[8] According to the website traffic analytics company Similarweb, Defendant's website has received 9.41 million visits in the last three months, with 91.60.% of the website traffic coming from the United States. *See* https://pro.similarweb.com/#/digitalsuite/websiteanalysis/overview/website-performance/*/999/3m?webSource=Total&key=chairish.com. Approximately 11.7% of the United States population resides in the State of California. So assuming Californians visited Defendant's website in equal proportions to other Americans, then Defendant received over 1,009,131 visitors from the state of California during this time period.

intent not to sell them as advertised, in violation of California Civil Code § 1770(a)(9). The claims of the named Plaintiff are typical of the claims of the Classes in that the named Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to include all mandatory fees or charges in the advertising, displaying, or offering a price for the items, throughout the online item purchase process.

47. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes and members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

48. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
## California Civil Code § 1770(a)(29)(A)
## (On Behalf Of The Nationwide and California Honest Pricing Law Subclasses)

49. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the Nationwide and California Honest Pricing Law Subclasses against Defendant.

51. Defendant owns, operates, or controls the Chairish.com website, which is a place where consumers can purchase furniture, art, décor, lighting, rugs and other home furnishings.

52. Defendant violated California Civil Code § 1770(a)(29)(A) by "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" on the product selection screens depicted in Figures 2, 3, 7, 11, and 14 of this Complaint.

53. Defendant's per item "Processing Fee" is a "mandatory fee[] or charge[]" that must be paid in order to purchase the item. Cal. Civ. Code § 1770(a)(29)(A). Defendant only gives consumers the option to purchase items via credit card or PayPal. A consumer cannot purchase an item using his credit card without paying the Processing Fee. Plaintiff purchased the Pair of Distressed Greco-Roman Neoclassical Style Ionic Columns from Defendant in or around January 30, 2025, using the feature on Defendant's website shown *supra* ¶¶ 20-26.

54. Plaintiff and Nationwide and California Honest Pricing Law Subclass Members were harmed because they were forced to pay Defendant's unlawfully applied Processing Fees. Because the total cost of the antique furnishings was not disclosed to Plaintiff and Honest Pricing Law Subclass Members at the beginning of the purchase process, the resulting fees or charges that were applied were unlawful pursuant to California Civil Code § 1770(a)(29)(A).

55. Plaintiff and Nationwide and California Honest Pricing Law Class and Subclass Members were also harmed by not having the total cost of their antique furnishings disclosed upfront at the start of the purchase process. By not knowing the total cost of their antique furnishings before selecting them for purchase from Defendant, Plaintiff and Nationwide and California Honest Pricing Law Subclass Members could not shop around for antique furnishings from other online antique furnishing sellers like 1stDibs, Elsie Green and Lone Fox, just to name a few. As such, Plaintiff and Nationwide and California Honest Pricing Law Subclass Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its processing charges, Defendant was able to reduce price competition and cause consumers like Plaintiff and Nationwide and California Honest Pricing Law Subclass Members to overpay.

56. Plaintiff and Nationwide and California Honest Pricing Law Subclass Members relied on Defendant's false and misleading representations that the cost of the antique furnishings did not include fees in choosing to purchase their antique furnishings.

57. On February 13, 2026, Defendant received a letter via certified mail notifying it that it violated Cal. Civ. Code §§ 1750, *et. seq.*, specifically including subsections 1770(a)(9) and (a)(29)(A). The notice letter was sent on behalf of Plaintiff and all other similarly situated persons. The letter provided notice that Defendant's pricing practices are deceptive acts in violation of the CLRA. Specifically, the letter provided notice that in violation of California Civil Code § 1770(a)(29)(A), Defendant "[a]dvertis[es], display[s], or offer[s] a price for a good or service that does not include all mandatory fees or charges other than either … [t]axes or fees imposed by a government on the transaction[]" and "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer." The letter also provided notice that in violation of California Civil Code § 1770(a)(9), Defendant "[a]dvertis[es] goods … with intent not to sell them as advertised[.]" The letter demanded that Defendant provide prompt relief. As of the date of this First Amended Complaint, Defendant has been given ample opportunity to investigate and settle claims on behalf of Plaintiff and the putative class members yet failed to take any remedial action.

58. On behalf of herself and members of the Nationwide and California Honest Pricing Law Subclasses, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover damages and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

## COUNT II
## California Civil Code § 1770(a)(9)
## (On Behalf Of The Nationwide and California Classes)

59. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

60. Plaintiff brings this claim individually and on behalf of the members of the Nationwide and California Classes against Defendant.

61. Plaintiff purchased the Pair of Distressed Greco-Roman Neoclassical Style Ionic Columns from Defendant in or around January 30, 2025, using the feature on Defendant's website shown *supra* ¶¶ 20-26.

62. Defendant violated California Civil Code § 1770(a)(9) by "[a]dvertising goods … with intent not to sell them as advertised" on the product selection screens depicted in Figures 2, 3, 7, 11, 14. Specifically, Defendant advertised and expressly represented the price of $5,800 with intent not to sell them at the advertised "Add to Cart" price.

63. As a result, Plaintiff and Nationwide and California Class Members were harmed because they were forced to pay Defendant's unlawfully applied Processing Fees.

64. Plaintiff and Nationwide and California Class Members were also harmed by not having the total cost of their antique furnishings disclosed upfront at the start of the purchase process. By not knowing the total cost of their antique furnishings before selecting them for purchase from Defendant, Plaintiff and Nationwide and California Class Members could not shop around for antique furnishings from other online antique furnishing sellers like 1stDibs, Elsie Green and Lone Fox, just to name a few. As such, Plaintiff and Nationwide and California Class Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its processing charges, Defendant was able to reduce price competition and cause consumers like Plaintiff and Nationwide and California Class Members to overpay.

65. Plaintiff and Nationwide and California Class Members relied on Defendant's false and misleading representations of the advertised cost of the antique furnishings in choosing to purchase their antique furnishings.

66. As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the price of the items on its website which are false due to the uniform imposition of the Processing Fee described herein. Indeed, Defendant concealed the true price of the items, and the true nature of the Processing Fee it was charging on each purchase, from Plaintiff and Nationwide and California Class Members.

67. No reasonable consumer would expect the "Add to Cart" price advertised by Defendant or the "Make an Offer" prices to include an unlawful Processing Fee in addition to lawful sales tax and shipping costs. *See* Figures 2, 3, 7, and 11; *see also Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 845-46 (E.D. Cal. 2024) ("Plaintiffs have sufficiently alleged [Defendant] advertises one price for its products while also surreptitiously charging a higher price by adding the Service Fee. Thus, Plaintiffs have sufficiently alleged [Defendant] advertises their goods with the intent not to sell them as advertised.").

68. Defendant, which operates a website selling antiques, does not provide services that would lead reasonable consumers to expect the imposition of the Processing Fee. It is unclear what, if any, "processing" customers accessing the website to purchase antique furnishings would expect to pay for, and Defendant does not disclose the total Processing Fee anywhere before customers reach the screen depicted in Figures 6, 9, 13, and 16 of this complaint.

69. Defendant willfully employed a scheme designed to advertise a price that is not the true cost of the antique furnishings, and did so willfully, wantonly, and with reckless disregard for the truth.

70. On behalf of herself and members of the Nationwide and California Classes, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover damages and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Classes, prays for judgment as follows:

A. For an order certifying the Classes and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Subclasses and Plaintiff's attorneys as Class Counsel to represent the Classes and Subclasses;

B. For an order declaring that Defendant's conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiff and the Classes and Subclasses on all counts asserted herein;

D. For compensatory damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Classes and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 16, 2026

**BURSOR & FISHER, P.A.**

By: */s/ Stefan Bogdanovich*
Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiff*